WESTON FUNDING CORPORATION,
Plaintiff,

v.

LAFAYETTE TOWERS, INC., a corporation of the State of New Jersey, and George C. Peck, Defendants.

No. 75 Civ. 1305.

United States District Court,
S. D. New York.

March 9, 1976.

Albert B. Gins, New York City, for plaintiff Weston Funding Corp.

Kane & Zucker, by Stanley Zucker, New York City, for defendants Lafayette Towers, Inc., and George C. Peck.

ROBERT L. CARTER, District Judge.

## OPINION

Defendants have moved, pursuant to Rule 56, F.R.Civ.P., for summary judgment on the grounds of *res judicata.* For the reasons set out below, the motion is granted.

*Prior Proceedings*

This is an action for brokerage commissions brought by plaintiff Weston Funding Corp. ("Weston"), a New York corporation, against defendants Lafayette Towers, Inc. ("Lafayette"), a New Jersey corporation, and George C. Peck, Lafayette's sole shareholder, a New Jer-

sey resident. On November 1, 1973, the plaintiff corporation and the defendants entered into an agreement whereby Weston was given the exclusive right and authorization (for a period of seven days) to obtain a standby commitment for end loans in the sum of $4,500,000 relative to the financing of Lafayette Towers. Weston was to receive as compensation an amount equal to 3¼% of the total commitment, such sum to be deemed earned and payable when the letter of commitment was issued. This agreement was signed by Peck on behalf of Lafayette and was extended orally by the defendants.

By February, 1974, Weston was finally successful in obtaining a written construction loan commitment from the First National State Bank of New Jersey for the full sum of $4,500,000. On February 25, 1974, Weston wrote to Peck to inform him of the loan commitment. The letter went on to recite as follows:

"CONFIRMING OUR AGREEMENT AND UNDERSTANDING THE AMOUNT OF $191,250 HAS BEEN EARNED AND IS DUE AND PAYABLE TO WESTON FUNDING CORPORATION FOR THEIR BROKERAGE SERVICES IN THIS MATTER.

"YOUR SIGNATURE BELOW IN BOTH PLACES WILL CONSTITUTE YOUR ACCEPTANCE AS AN INDIVIDUAL, AND, FOR THE CORPORATION."

At a subsequent meeting in New Jersey, Peck signed the letter as "accepted and approved" on behalf of himself and Lafayette. Peck then produced a check in the sum of $25,000 as partial payment of the commission due to Weston. The defendants have made no further payments pursuant to the November 1, 1973, agreement. It is plaintiff's contention that the defendant subsequently used the loan commitment obtained by Weston as a springboard to obtain loans from different sources without the plaintiff's knowledge.

On May 21, 1974, Weston filed a complaint in the United States District Court for the District of New Jersey (Civil Action No. 74–746), alleging the facts as stated above and demanding the balance allegedly due for their brokerage services in the amount of $166,250, together with interest and costs. On June 22, 1974, defendants filed an answer and counterclaim, followed by a motion for summary judgment filed on September 21, 1974. On November 6, 1974, Judge James A. Coolahan granted summary judgment in favor of defendants on the grounds that under New Jersey law only brokers licensed in New Jersey could bring suit for commissions in the courts of that state, and that plaintiff was not so licensed. Weston then filed a notice of appeal from the grant of summary judgment in defendants' favor. On March 18, 1975, however, the parties stipulated to a dismissal of the appeal. In May, 1975, Weston filed a new action in the Southern District of New York realleging the same facts and causes of action as in the prior New Jersey action.[1] Defendants answered and have now brought on the instant motion for summary judgment.[2]

---

1. See note 4, infra.

2. The defense of res judicata, while contained in the list of affirmative defenses in F.R.Civ.P. 8(c), is not specified as a ground for a pretrial motion to dismiss pursuant to Rule 12(b), F.R. Civ.P., or for summary judgment pursuant to Rule 56, F.R.Civ.P. Nevertheless, it has generally been held in this circuit that in the interest of efficient and expeditious judicial administration, the defense of res judicata can be raised and considered at the pretrial stage. Thistlethwaite v. City of New York, 362 F.Supp. 88, 91 (S.D.N.Y.1973), aff'd, 497 F.2d 339 (2d Cir.) cert. denied, 419 U.S. 1093, 95 S.Ct. 686, 42 L.Ed.2d 686 (1974); Katz v. State of Connecticut, 307 F.Supp. 480, 483 (D.Conn.1969), aff'd, per curiam 433 F.2d 878 (2d Cir. 1970); see Southard v. Southard, 305 F.2d 730, 732 (2d Cir. 1962). See generally, 5 Wright & Miller, Federal Practice and Procedure § 1360 (1969 ed.). This is particularly true where, as here, the issue is raised by way of motion for summary judgment so that the plaintiff is provided with an adequate opportunity to present arguments rebutting the defense. See Kaufman v. Somers Board of Education, 368 F.Supp. 28, 31–2 (D.Conn.1973); 5 Wright & Miller, Federal Practice and Procedure § 1277 (1969 ed.).

*Discussion*

## I.

 It is well settled that for a judgment in a prior action to be a bar to reaching the merits in a subsequent action the following elements must be established. First, the prior judgment must have been rendered by a court of competent jurisdiction; second, the prior judgment must have been a final judgment on the merits; and third, the same cause of action and the same parties or their privies must have been involved in both suits.[3]

I have no difficulty in deciding that the first and third of these elements have been satisfied.[4]

## II.

The second element—whether the prior judgment is deemed to be "on the merits" requires further elaboration.

 The requirement that a judgment, to be *res judicata,* must be rendered "on the merits" guarantees to every plaintiff the right once to be heard on the substance of his claim.

"Thus, ordinarily, the doctrine may be invoked only after a judgment has been rendered which reaches and determines 'the real or substantial grounds of action or defense as distinguished from matters of practice, procedure, jurisdiction or form,' *Clegg v. United States,* 112 F.2d 886, 887 (10th Cir. 1940), and, at common law, a dismissal on a ground which did not resolve the substantive merit of the complaint was not a bar to a subsequent action on the same claim. *Hughes v. United States,* 4 Wall. 232, 71 U.S. 232, 237, 18 L.Ed. 303 (1865); *Halderman v. United States,* 91 U.S. 584, 585–586, 23 L.Ed. 433 (1876)."

*Saylor v. Lindsley,* 391 F.2d 965, 968 (2d Cir. 1968).

Rule 41(b), F.R.Civ.P., operates as an exception to this general principle.

 The last sentence of that Rule provides as follows:

"Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule,

3. *Commissioner of Internal Revenue v. Sunnen,* 333 U.S. 591, 597, 68 S.Ct. 715, 719, 92 L.Ed. 898, 905 (1948); *Cromwell v. County of Sac,* 94 U.S. 351, 352–353, 24 L.Ed. 195, 197–198 (1877); *Herendeen v. Champion International Corporation,* 525 F.2d 130, 133 (2d Cir. 1975); *Speed Products Co. v. Tinnerman,* 222 F.2d 61 (2d Cir. 1955).

4. As to the first element, there is no dispute that the court was fully competent to decide the controversy before it. As to the third element, however, plaintiff suggests that the instant action is founded upon a new cause of action since the complaint rests upon the violation of the November 1, 1973 agreement, whereas the New Jersey complaint was brought with respect to the letter of agreement dated February 25, 1974. This contention is without merit. It is clear that the letter of February 25, 1974 merely provided a precise calculation for the formula already agreed upon, as evidenced by the agreement of November 1, 1973. Regardless of whether plaintiff chooses to sue with respect to a document that sets forth the precise terms of his agreement with the defendants, or with respect to a later executed document which reflects in dollar figures the same terms as were initially agreed upon, plaintiff's cause of action re-

mains the same. As the Second Circuit recently noted:

"The test for determining whether causes of action are the same for purposes of res judicata has been variously expressed. Most frequently cited as the relevant criteria by both this court and the New York courts are [1] whether a different judgment in the second action would impair or destroy rights or interests established by the judgment entered in the first action, [2] whether the same evidence is necessary to maintain the second cause of action as was required in the first, and [3] whether the essential facts and issues in the second were present in the first."

(footnotes omitted)

*Herendeen v. Champion International Corporation, supra,* 525 F.2d at 133–34. *See also, McNellis v. First Federal Savings & Loan Ass'n of Rochester, N. Y.,* 364 F.2d 251 (2d Cir.), *cert. denied,* 385 U.S. 970, 87 S.Ct. 504, 17 L.Ed.2d 434 (1966); *DeCoss v. Turner & Blanchard, Inc.,* 267 N.Y. 207, 211, 196 N.E. 28, 30 (1935). Under any of these formulations—most particularly under the second—it is apparent that the cause of action before the United States District Court for the District of New Jersey is identical with the cause of action now before this court.

other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join a party under Rule 19, operates as an adjudication upon the merits."

Thus, if the court does not specify that a dismissal is without prejudice, as Judge Coolahan did not specify, and if the dismissal is not embraced within one of the three exceptions to Rule 41(b), the dismissal will be deemed to be with prejudice—i. e., an adjudication on the merits barring a second suit. *See Kern v. Hettinger,* 303 F.2d 333, 340 (2d Cir. 1962); *see generally,* 9 Wright & Miller, *Federal Practice and Procedure* § 2373 (1971 ed.).

There are three stated exceptions to the rule that a dismissal is with prejudice unless the court otherwise specifies—Rule 41(b) does not apply to a dismissal for lack of jurisdiction, for improper venue, or for failure to join a party under Rule 19. In *Costello v. United States,* 365 U.S. 265, 81 S.Ct. 534, 5 L.Ed.2d 551 (1961), the Supreme Court refused to construe narrowly the lack of jurisdiction exception to Rule 41(b). The court, per Justice Brennan, held:

"It is too narrow a reading of the exception to relate the concept of jurisdiction embodied [in Rule 41(b)] to the fundamental jurisdictional defects which render a judgment void and subject to collateral attack, such as lack of jurisdiction over the person or subject matter. We regard the exception as encompassing those dismissals which are based on a plaintiff's failure to comply with a precondition requisite to the Court's going forward to determine the merits of his substantive claim." 365 U.S. at 285, 81 S.Ct. at 544, 5 L.Ed.2d at 564.

The Court went on to note that at common law dismissal on a ground not going to the merits was not ordinarily a bar to a subsequent action on the same claim and could "not discern in Rule 41(b) a purpose to change this common-law principle with respect to dismissals in which the merits could not be reached for failure of the plaintiff to satisfy a precondi-

tion." The Court therefore concluded that:

"All of the dismissals enumerated in Rule 41(b) which operate as adjudications on the merits—failure of the plaintiff to prosecute, or to comply with the Rules of Civil Procedure, or to comply with an order of the Court, or to present evidence showing a right to the relief on the facts and the law—primarily involve situations in which the defendant must incur the inconvenience of preparing to meet the merits because there is no initial bar to the Court's reaching them. It is therefore logical that a dismissal on one of these grounds should, unless the Court otherwise specifies, bar a subsequent action. In defining the situations where dismissals 'not provided for in this rule' also operate as adjudications on the merits, and are not to be deemed jurisdictional, it seems reasonable to confine them to those situations where the policy behind the enumerated grounds is equally applicable." 365 U.S. at 286, 81 S.Ct. at 545, 5 L.Ed.2d at 565.

█ In light of the *Costello* decision, this circuit has recognized that Rule 41(b) does not apply in situations in which an action is dismissed because of some initial bar to reaching the merits of plaintiff's claims. Thus, in *Saylor v. Lindsley,* 391 F.2d 965, 969 (2d Cir. 1968), the court held that a dismissal for failure to post a bond-for-costs would not call for the application of Rule 41(b) and would not constitute an adjudication on the merits so as to bar a subsequent suit. *See* 9 Wright & Miller, *Federal Practice and Procedure* § 2373 (1971 ed.). *Cf. Nasser v. Isthmian Lines,* 331 F.2d 124, 127 (2d Cir. 1964).

█ In my view, the rationale of *Costello* prevents the court from blindly or talismanically labelling a dismissal as one with or without prejudice, requiring instead a rigorous and thorough examination of the grounds for dismissal.

Accordingly, we must proceed to consider more fully the substance of defendants' *res judicata* defense.

## III.

 As I read his opinion, two issues were raised and decided by Judge Coolahan in the New Jersey action. First, he concluded that the transaction's contacts with New Jersey were sufficient to warrant the application of New Jersey law to the controversy. Second, Judge Coolahan concluded that under New Jersey law the plaintiff was precluded from maintaining his cause of action in the New Jersey courts and hence granted defendants' motion for summary judgment. In particular, the federal trial court relied on Section 2 of the New Jersey Real Estate Brokers Licensing Act, N.J.S.A. 45:15–1 *et seq.* (1963), which provides, in pertinent part, as follows:

"No person, firm, partnership, association or corporation shall bring or maintain any action in the courts of this State for the collection of compensation for the performance of any of the acts mentioned in this article without alleging and proving that he was a duly licensed real estate broker at the time the alleged cause of action arose." [N.J.S.A. 45:15–3]

N.J.S.A. 45:15–3 defines a real estate broker as, among others,

". . . a person, firm or corporation who, for a fee, commission . . lists for sale, sells, exchanges, buys or rents, or offers or attempts to negotiate a sale, exchange, purchase . . of real estate . . . or offers or attempts or agrees to negotiate a loan secured or to be secured by mortgage . . . ."

It was undisputed that plaintiff was not a licensed broker in New Jersey.

Furthermore, the court, relying on New Jersey case law,[5] rejected plaintiff's argument that he was a "finder" rather than a "broker" and hence not precluded by the operation of the New Jersey statute.

Regardless of the characterization of the prior dismissal the instant motion must be barred. As has been noted, Judge Coolahan determined that New Jersey law—including the New Jersey Real Estate Brokers Licensing Act—would be applied to the controversy. This determination is binding in subsequent litigation between the parties as a matter, strictly speaking, not of *res judicata,* but of collateral estoppel or "issue preclusion." Section 68 of the *Restatement of the Law, Second, Judgments* (Tentative Draft No. 1, 1973), sets out the general rule of issue preclusion as follows:

"When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.[6]

The issue of what state law would be applied to the controversy was raised and litigated in the prior action and determination of that question formed the foundation on which the grant of summary judgment rested.

 Plaintiff's recourse was to challenge the application of New Jersey law to the controversy and to urge instead that New York law applied.[7] Plaintiff did not seek to appeal Judge Coolahan's decision. His ruling, however, cannot

---

5. *See Corson v. Keane,* 4 N.J. 221, 72 A.2d 314 (1950).

6. Even where a judgment for the defendant is not on the merits and plaintiff is not precluded thereby from maintaining a new suit on the same cause of action, he is nonetheless precluded from relitigating questions litigated and decided in the prior action. Restatement of the Law, Judgments, § 49, comment b, at 195 (1942); *see,* Restatement of the Law, Second, Judgments, (Tentative Draft No. 1, 1973) § 48.-

1, comment b. See also, *In re Kauffman Mutual Fund Actions,* 479 F.2d 257, 267 (1st Cir.), *cert. denied,* 414 U.S. 857 (1973); *Acree v. Air Line Pilots Association,* 390 F.2d 199, 203 (5th Cir.), *cert. denied,* 393 U.S. 852 (1968).

7. There is apparently *no dispute that plaintiff* is a licensed broker in New York and would not have been barred from suing in New York by virtue of § 442–d of the New York Real Property Law.

now be relitigated—here, or in any other federal court for that matter. *Cf. Sun Sales Corporation v. Block Land, Inc.,* 456 F.2d 857, 861 (3rd Cir. 1972).[8]

## IV.

Even if the conflict of laws decision in the prior action was not binding on this court as a matter of collateral estoppel, the instant motion must nonetheless be granted on *res judicata* grounds. This is so since the dismissal entered by Judge Coolahan must be deemed to be a judgment "on the merits".

Section 49 of the *Restatement of the Law, Judgments* (1942), comment a, provides as follows:

"Judgment not on the merits. A judgment for the defendant is not on the merits where it is based merely on rules of procedure rather than on rules of substantive law. If the judgment determines that the plaintiff has no cause of action, it is on the merits; but if it determines only that the plaintiff is not entitled to recover in the particular action, it is not on the merits. If the defendant, whether on demurrer, motion, verdict or otherwise, obtains judgment in his favor on a ground not involving the substance of the plaintiff's cause of action, the cause of action is not extinguished thereby. This is the case, for example, where the judgment is based on the lack of jurisdiction of the court over the defendant or over the subject of the action, on the plaintiff's lack of capacity to sue, on the pendency of a prior action, on the misjoinder or nonjoinder of parties or on the misjoinder of causes of action."[9]

Section 110 of the *Restatement of the Law (Second), Conflict of Laws (1969),* and the Comment thereto, is of like import. Section 110 provides as follows:

"A judgment that is not on the merits will be recognized in other states only as to issues actually decided."

Comment (a) to Section 110 provides:

"A judgment is not on the merits when it does not involve the substance of the plaintiff's cause of action. So a judgment for the defendant is not on the merits if it is based on the court's lack of jurisdiction or of competence over the subject matter of the contro-

---

8. In Sun Sales, *supra,* the Third Circuit reversed (on grounds not applicable to this case) the decision of the district court which had granted defendants' motion to dismiss on the grounds of *res judicata.* In reversing, the court emphasized that the diversity jurisdiction of the federal courts is a matter of particular federal interest based on the grant of judicial power contained in Article III, Section 2 of the Constitution, and that the scope of that jurisdiction must be determined at the federal and not the state level. *See Sun Sales Corporation v. Block Land, Inc., supra,* 456 F.2d at 862; *Szantay v. Beech Aircraft Corp.,* 349 F.2d 60 (4th Cir. 1965). This jurisdictional determination, however, has been made by the New Jersey federal court. Judge Coolahan's decision to apply the New Jersey Real Estate Brokers Licensing Act was more than a simple choice of law. It was, at least implicitly, a deferral to a legitimate state policy, the effect of which was to limit the jurisdiction of the federal court. That determination cannot be relitigated here. Again, plaintiff's recourse was to appeal the dismissal entered by the federal district court.

9. Section 49 of the First Restatement, Judgments was substantially readopted by the Reporters in §§ 48 and 48.1, Restatement of the Law, Second, Judgments (Tentative Draft No. 1, 1973). Section 48 of the Tentative Draft provides that "[a] valid and final personal judgment rendered in favor of the defendant bars another action by the plaintiff on the same claim", except as provided in §§ 48.1 and 61.2. Section 48.1 provides that:

(1) A personal judgment for the defendant, although valid and final, does not bar another action by the plaintiff on the same claim:
(a) When the judgment is one of dismissal for lack of jurisdiction, for improper venue, or for nonjoinder or misjoinder of parties;
· · · · ·

(2) A valid and final personal judgment for the defendant which rests on the prematurity of the action or on the plaintiff's failure to satisfy a precondition to suit, does not bar another action by the plaintiff instituted after the claim has matured, or the precondition has been satisfied, unless a second action is precluded by operation of the substantive law, or the circumstances are such that it would be manifestly unfair to subject the defendant to such an action.

versy, on improper venue, on the plaintiff's lack of capacity to sue, on the pendency of a prior action, on the misjoinder or non-joinder of parties or on the misjoinder of causes of action. A judgment for the defendant is also not on the merits if it is based on the ground that the plaintiff's action is barred by the forum's statute of limitations or on the ground that it would be contrary to the public policy of the forum to entertain the action."

See also *Saylor v. Lindsley,* 391 F.2d 965 (2d Cir.1968) (dismissal of a prior derivative action by a stockholder for failure to post a bond for costs did not operate as an adjudication on the merits and was not *res judicata* with respect to a subsequent derivative action brought by another stockholder against the same defendants); *Warner v. Buffalo Drydock Co.,* 67 F.2d 540 (2d Cir.1933) (dismissal of an action by one court as barred by laches did not bar recovery in another court); *see generally,* Paulsen and Sovern, *"Public Policy" in the Conflict of Laws,* 56 Colum.L.Rev. 969, 1010, 1011 (1956).

■■■ Is N.J.S.A. 45:15–3 a rule of substantive law? I believe that it is. Section 442–d of the New York Real Property Law is almost identical to the New Jersey statute relied upon by Judge Coolahan in dismissing the action before him. Section 442–d provides, in pertinent part, as follows:

"No person, copartnership or corporation shall bring or maintain an action in any court of this state for the recovery of compensation for services rendered, in any place in which this article is applicable, in the buying, selling, exchanging, leasing, renting or negotiating a loan upon any real estate without alleging and proving that such person was a duly licensed real estate broker or real estate salesman on the date when the alleged cause of action arose."

This statute has been found to be part of the substantive law of New York. *See Meltzer v. Crescent Leaseholds, Ltd.,* 442 F.2d 293, 295 (2d Cir.1971). As such, it would be applied by a New York federal court sitting in diversity, *Meltzer, supra,* affirming 315 F.Supp. 142 (S.D.N.Y. 1970), as well as by a federal court sitting in another state that has chosen to apply New York law to the controversy. *Backar v. Western States Producing Company,* 382 F.Supp. 1170, 1173 (W.D. Tex.1974).

There is no reason to suspect that the New Jersey statute is any less a substantive pronouncement than its New York counterpart. The rationale underlying Section 45:15–3 of the Real Estate Brokers Act was stated by the New Jersey Supreme Court as follows:

"In our judgment, however, the legislative objective in closing the courts to the unlicensed broker was to establish a policy so strong that neither the contract nor the unlawful efforts made in its pursuit could provide the basis of pecuniary benefit to him . . . ." *Tanenbaum v. Sylvan Builders, Inc.,* 29 N.J. 63, 148 A.2d 176, 181 (1959).

The licensing act, said the court, "is a regulatory measure and represents the strong public policy of our State". *Tanenbaum, supra,* 148 A.2d at 181.

Since the judgment of the New Jersey court in the prior action was a judgment "on the merits", the issues raised therein may not be relitigated.

## V.

Furthermore, this case is governed, I believe, by the doctrine announced by Mr. Justice Frankfurter in *Angel v. Bullington,* 330 U.S. 183, 67 S.Ct. 657, 91 L.Ed. 832 (1947). The facts of that case are simple. Bullington, a citizen of Virginia, sold land in Virginia to Angel, a citizen of North Carolina. Only part of the purchase price was paid. For the balance, Angel executed a series of notes secured by a deed of trust on the land. Upon default on one of the notes, Bullington, acting upon an acceleration clause in the deed, caused all other notes to become due and called upon the trustees to sell the land. The sale was duly

made in Virginia and the proceeds of the sale applied to the payment of the notes. Bullington then brought suit in the state courts of North Carolina to collect the deficiency. Angel countered with a demurrer, arguing that the suit was barred by virtue of a North Carolina statute which precluded recovery of deficiency judgments. The Superior Court of North Carolina overruled the demurrer; the Supreme Court of North Carolina reversed, holding that the North Carolina statute barred the suit, and the action was dismissed. Rather than appealing the dismissal, Bullington sued for the deficiency in the United States District Court for the Western District of North Carolina. Angel pleaded in bar the judgment in the North Carolina action. The District Court gave judgment for Bullington and the Court of Appeals for the Fourth Circuit affirmed. The Supreme Court granted certiorari and reversed the decision on the ground that the North Carolina state court judgment barred the subsequent relitigation of the action in the federal court in the same state. Mr. Justice Frankfurter, speaking for the majority, opined as follows:

"It is suggested that the North Carolina Supreme Court did not adjudicate the 'merits' of the controversy. It is a misconception of res judicata to assume that the doctrine does not come into operation if a court has not passed on the 'merits' in the sense of the ultimate substantive issues of a litigation. An adjudication declining to reach such ultimate substantive issues may bar a second attempt to reach them in another court of the State. Such a situation is presented when the first decision is based not on the ground that the distribution of judicial power among the various courts of the State requires the suit to be brought in another court in the State, but on the inaccessibility of all the courts of the State to such litigation. And that is the essence of the present case. The only issue in controversy in the first North Carolina litigation was whether or not all the courts of North

Carolina were closed to that litigation. The merits of that issue were adjudicated. And that was the issue raised in the second litigation in North Carolina—that in the federal district court. The merits of this issue having been adjudicated, they cannot be relitigated." 330 U.S. at 190, 67 S.Ct. at 661, 91 L.Ed. at 837.

 It is clear then that if a state court is closed to a party,. the federal diversity court is likewise closed. The result should be no different because the plaintiff has chosen to relitigate in a new forum rather than moving from state to federal court within the same jurisdiction.

Accordingly, plaintiff's action is barred here under both collateral estoppel and *res judicata* and defendants' motion for summary judgment must be granted.

It is SO ORDERED.